**Wendell Shane MACKEY, Plaintiff–Appellant,**

**v.**

**Dennis DYKE, et al., Defendants–Appellees.**

**No. 96–1217.**

United States Court of Appeals, Sixth Circuit.

Argued Jan. 27, 1997.

Decided April 16, 1997.

Paul D. Reingold (argued and briefed), Michigan Clinical Law Program, Ann Arbor, MI, for Plaintiff-Appellant.

Jonathon C. Pierce, E. Michael Stafford (argued and briefed), Office of the Attorney General, Corrections Division, Lansing, MI, for Defendant-Appellee.

Before: GUY, SUHRHEINRICH, and BATCHELDER, Circuit Judges.

SUHRHEINRICH, Circuit Judge.

State prisoner Wendell Shane Mackey appeals summary judgment for Michigan corrections officials ("Defendants") in this civil rights claim. The question in this case is whether Defendants violated Mackey's due process rights by failing to return him promptly to the general prison population after he was released from administrative segregation. We **AFFIRM**.

## I.

This case is before us on appeal a second time. *See Mackey v. Dyke,* 29 F.3d 1086 (6th Cir.1994). We are again asked to answer the same question, this time in light of superseding Supreme Court precedent. *See Sandin v. Conner,* —— U.S. ——, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

At all times relevant to this case, Mackey was a prisoner in the custody of the Michigan Department of Corrections ("MDOC").[1] On July 7, 1988, Defendants found Mackey guilty of misconduct for possession of illegal contraband and for assaulting another prisoner. Prison officials reclassified Mackey to administrative segregation.

During Mackey's period of segregation, the MDOC staff filed monthly reviews on him pursuant to Michigan Admin.Code R. 791.4405(a)(5). Each review from September 1988 to February 1989 recommended that Mackey remain in segregation because he presented a danger to other prisoners or staff. The March 1989 review recommended his release to the general prison population, but the committee charged with oversight of security classification denied the recommendation. The April 1989 review again recommended his release into the general prison

population, and this time the committee accepted the recommendation.

Although the recommendation to reclassify Mackey had been approved, he was not immediately transferred. In fact, Mackey remained in administrative segregation for an additional 117 days. His monthly reviews continued. Each review simply stated that Mackey had been either "released from segregation" on April 20 and that transfer was "pending," or "released pending transfer."

On June 6, 1989, the prison warden wrote Mackey a letter stating that Mackey had been recommended for reclassification and that he would be transferred when bed space became available. On June 11, 1989, Mackey filed a prisoner grievance concerning his continued confinement in administrative segregation. On June 21, 1989, Defendants sent Mackey a letter stating that although he had been released from administrative segregation, a current scarcity of beds at the two facilities eligible to receive him prevented his transfer. When Mackey's status did not change during the ensuing month, he filed another grievance. On August 17, 1989, Defendants reclassified Mackey into the general population at Marquette Branch Prison.

Three years later Mackey filed a complaint under 42 U.S.C. § 1983 against Defendants claiming that they had violated his right to due process by failing to reclassify him promptly after he was released from administrative segregation.[2] Defendants filed a motion to dismiss or, alternatively, for summary judgment. A magistrate judge held a hearing and issued a report recommending that: (1) Defendants' motion to dismiss be granted because no federally protected liberty interest existed in housing pursuant to a particular security classification; (2) even if a liberty interest existed, Defendants provided Mackey with all the process he was due; and (3) if there had been a violation of Mackey's constitutional rights, Defendants were entitled to qualified immunity. The district court accepted the magistrate judge's recommendations in an order entered May 28,

---

1. The following facts are taken from our original decision in *Mackey v. Dyke,* 29 F.3d 1086 (6th Cir.1994).

2. Mackey did not dispute the propriety of his initial confinement to administrative segregation, nor does he raise that issue in this appeal.

1993, and granted summary judgment to Defendants.

This Court reversed, holding: (1) under *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983) and *Kentucky Department of Corrections v. Thompson,* 490 U.S. 454, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989), Michigan's prison regulations created a liberty interest in Mackey's transfer from administrative segregation after he no longer qualified for segregation, and (2) that corrections officials were not entitled to qualified immunity in light of Mackey's clearly established right to release from segregation. *Mackey,* 29 F.3d at 1092–95. This Court also remanded for discovery concerning whether bed space for Mackey was available in the general prison population and for a decision on whether Defendants' conduct constituted deliberate indifference under 42 U.S.C. § 1983. *Id.*

On remand, Mackey moved for summary judgment. Two days before the motion was to be argued, the Supreme Court decided *Sandin v. Conner,* —— U.S. ——, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), a Hawaii case in which a state prisoner brought a civil rights claim against prison officials for deprivation of due process in the conduct of a disciplinary hearing and his subsequent placement in disciplinary segregation for 30 days. The Court in *Sandin* expressly overruled the *Hewitt* methodology, which required a reviewing court to ask whether the state had gone beyond issuing mere procedural guidelines and had used "language of an unmistakably mandatory character" such that the incursion on liberty would not occur "absent specified substantive predicates." *Id.* at ——, 115 S.Ct. at 2298 (quoting *Hewitt,* 459 U.S. at 471–72, 103 S.Ct. at 871). The Supreme Court determined that *Hewitt* had produced at least two undesirable effects. First, it created "disincentives for States to codify prison management procedures in the interest of uniform treatment." *Id.* at ——, 115 S.Ct. at 2299. Second, it "led to the involvement of the federal courts in the day-to-day management of prisons, often squandering judicial resources with little offsetting benefit to anyone." *Id.*

In accordance with these concerns, the *Sandin* Court elaborated a new test that accords prison authorities much needed latitude in devising regulations for the safe and efficient management of their facilities. The *Sandin* test holds that state prisoners' liberty interests are generally limited to "freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force nonetheless imposes *atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.*" *Id.* at ——, 115 S.Ct. at 2300 (citations omitted) (emphasis added). In light of *Sandin,* the district court requested that Mackey and Defendants submit supplemental briefs.

Bolstered by the Court's holding in *Sandin,* Defendants moved for summary judgment on the grounds that Mackey had no liberty interest protected by the Due Process Clause. The magistrate judge issued a report recommending that Mackey's motion for summary judgment be denied and that Defendants' motion for dismissal be granted. On January 11, 1996, the district court issued a one-paragraph order adopting the magistrate judge's report and recommendation in full. Mackey appeals.

## II.

We review de novo the district court's grant of a motion for summary judgment. *Hartsel v. Keys,* 87 F.3d 795, 799 (6th Cir. 1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 683, 136 L.Ed.2d 608 (1997). We must affirm the district court only if it determines that the pleadings, affidavits, and other submissions show " 'that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Id.* (quoting Fed.R.Civ.P. 56(c)). When evaluating this appeal, we must view the evidence in the light most favorable to the non-moving party. *Id.* at 799 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

Mackey raises four issues on appeal: (1) he had a protected liberty interest under *Sandin;* (2) the district court erred in grant-

ing summary judgment; (3) Defendants' failure to release him amounted to a procedural due process violation; and (4) *Sandin* should not be applied retroactively.

■ Mackey does not, and could not after *Sandin*, argue that placement in administrative segregation is an "atypical and significant hardship." In *Rimmer–Bey v. Brown*, 62 F.3d 789 (6th Cir.1995), this Court applied the *Sandin* test to a Michigan inmate's claim that the mandatory language of the Michigan prison regulations created a liberty interest that he receive notice and a hearing prior to being *placed* in administrative segregation. This Court disagreed, stating that even if the language of the prison regulations were mandatory, Rimmer–Bey still needed to "prove that he suffered restraint which imposed an '*atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.*'" *Id.* at 790–91 (quoting *Sandin*, —— U.S. at ——, 115 S.Ct. at 2300). This Court concluded that "plaintiff's placement in administrative segregation was not an atypical and significant hardship, as intended by *Sandin*, within the context of his life sentence." *Id.* at 791.

We hold that under the facts and circumstances of this case, Defendant's maintenance of Mackey in administrative segregation did not impose an atypical or significant hardship on him. The delay in transferring Mackey was understandable given the corrections system's need to find him a bed at a suitable security level institution in an overcrowded prison system, with many prisoners needing the same type of transfer. To rule in Mackey's favor would run counter to the view expressed in several Supreme Court cases that "federal courts ought to afford appropriate deference and flexibility to state [prison] officials trying to manage a volatile environment." *Sandin*, —— U.S. at ——, 115 S.Ct. at 2299 (citations omitted).

■ Mackey's remaining claims warrant little discussion. The district court properly determined that Defendants were entitled to summary judgment, as there remained no genuine issue as to any material fact. Furthermore, because Mackey's detention in administrative segregation did not create a liberty interest, Defendants' failure to release him did not amount to a procedural due process violation. Lastly, this Court properly applied *Sandin* retroactively. *See Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 97, 113 S.Ct. 2510, 2517, 125 L.Ed.2d 74 (1993) (holding that in noncriminal matters, when the Court "applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review"). Accordingly, we **AFFIRM**.