The PEOPLE of the State of Colorado, Petitioner.

v.

Robert Gene VALENZUELA, Jr., Respondent.

No. 08SC418.

Supreme Court of Colorado, En Banc.

Sept. 14, 2009.

John W. Suthers, Attorney General, Matthew S. Holman, First Assistant Attorney General, Denver, Colorado, Attorneys for Petitioner.

Law Office of Jami Vigil and Associates, Jami L. Vigil, Westminster, Colorado, Attorneys for Respondent.

Justice MARTINEZ delivered the Opinion of the Court.

## I. Introduction

Respondent Robert G. Valenzuela was convicted, pursuant to a plea agreement, of conspiracy to distribute a schedule II controlled substance—a class three felony—in violation of section 18–18–405(1)(a), C.R.S. (2008), and first degree kidnapping—a class two felony—in violation of section 18–3–301(1)(a)(3), C.R.S. (2008).[1] The trial court applied the extraordinary risk of harm sentence enhancement provision contained in section 18–1.3–401(10)(b), C.R.S. (2008) ("extraordinary risk provision"), to Valenzuela's sentence for the conspiracy to distribute a schedule II controlled substance charge.

On appeal, the court of appeals held, in an unpublished opinion, that the extraordinary risk provision does not apply to conspiracy to distribute a schedule II controlled substance and remanded to the trial court for resentencing. *People v. Valenzuela,* No. 06CA0026, 2008 WL 885987 (Colo.App. April 3, 2008).

Section 18–18–405(1)(a) ("the offense provision") enumerates a number of different ways the offense provision can be violated. Included within this list is simple possession of a controlled substance, possession of a controlled substance with the intent to dispense, sell or distribute, manufacture of a controlled substance, sale and distribution of a controlled substance, and conspiracy and attempt to sell, dispense, or manufacture a controlled substance. In contrast, the extraordinary risk provision only applies to "unlawful distribution, manufacturing, dispensing, sale, or possession of a controlled substance with the intent to sell, distribute, manufacture, or dispense, as defined in section 18–18–405." Because, by its terms, the extraordinary risk provision does not apply to conspiracy to distribute a controlled substance, we affirm the judgment of the court of appeals.

---

1. Valenzuela was charged in 2004 under sections 18–18–405(1)(a), C.R.S. (2004) and 18–3–301(1)(a)(3), C.R.S. (2004). Sections 18–18– 405(1)(a) and 18–3–301(1)(a)(3) have not been amended since 2004.

## II. Facts and Procedural History

In calculating Valenzuela's sentence on the conspiracy to distribute a controlled substance and first degree kidnapping convictions, the trial court applied a number of mandatory statutory sentencing provisions to the convictions. First, in addition to conspiracy to distribute a controlled substance and first degree kidnapping, Valenzuela pleaded guilty to a crime of violence sentence enhancement count on the kidnapping charge under section 18–1.3–406(2)(a)(I)(A), C.R.S. (2008). Valenzuela also admitted that the amount of the controlled substance involved was 25 to 450 grams, therefore subjecting him to the mandatory minimum sentencing provisions of section 18–18–405(3)(a)(I), and that he committed the offenses while on parole.

The presumptive range for a class three felony is four to twelve years imprisonment, section 18–1.3–401(1)(a)(V)(A); a person who commits a felony while on parole is subject to sentencing of up to twice the maximum in the presumptive range. § 18–1.3–401(8)(a)(II). Additionally, the parties assumed that conspiracy to distribute a controlled substance was classified as an extraordinary risk of harm offense, and that under section 18–1.3–401(10)(b) the maximum presumptive range sentence of twelve years had to be increased by four years before it was doubled pursuant to the enhancement provision applicable to parolees. Therefore, applying these provisions, the trial court determined the maximum sentence Valenzuela could receive on the controlled substance count was thirty-two years in the Department of Corrections.

The trial court sentenced Valenzuela to a thirty-two year sentence on the conspiracy to distribute a schedule II controlled substance conviction and a concurrent sentence of forty-five years on the conviction for first degree kidnapping. This appeal concerns only whether the extraordinary risk sentencing provision contained in section 18–1.3–401(10)(b) applies to Valenzuela's controlled substance conviction; the first degree kid-napping sentence is not at issue in this appeal.

On appeal, sua sponte, the court of appeals held the sentence was improperly enhanced under the extraordinary risk provision because conspiracy to distribute a controlled substance is not brought within the scope of the extraordinary risk provision, and therefore the maximum sentence allowed under the sentencing statutes is twenty-four years.

█ This court granted certiorari in order to determine whether the extraordinary risk provision applies to conspiracy to distribute a controlled substance, as defined by section 18–18–405(1)(a).[2] Because we agree with the court of appeals and find that conspiracy to distribute a controlled substance is not an extraordinary risk crime under section 18–1.3–401(10), we affirm the court below and remand for resentencing consistent with this opinion.

## III. Standard of Review

█ Statutory interpretation is a question of law subject to de novo review. *Klinger v. Adams County Sch. Dist. No. 50*, 130 P.3d 1027, 1031 (Colo.2006). A reviewing court begins the analysis with the plain language of the statute. If the statute is clear and unambiguous on its face, then the court need look no further. *People v. Luther*, 58 P.3d 1013, 1015 (Colo.2002). If the statute is ambiguous, the court looks to the statute's legislative history, the consequences of a given construction, and the overall goal of the statutory scheme to determine the proper interpretation of the statute. *People v. Cooper*, 27 P.3d 348, 354 (Colo.2001).

## IV. Analysis

The offense provision, section 18–18–405(1)(a), provides, in relevant part:

It is unlawful for any person knowingly to manufacture, dispense, sell, distribute, possess, or to possess with intent to manufacture, dispense, sell, or distribute a controlled substance; or induce, attempt to induce, or conspire with one or more other

---

**2.** The issue this court granted certiorari on was: "whether conspiracy to distribute a controlled substance, an offense wholly contained in section 18–18–405(1)(a) constitutes an extraordinary risk crime under section 18–1.3–401(10)."

persons to manufacture, dispense, sell, distribute, possess, or possess with intent to manufacture, dispense, sell, or distribute a controlled substance; or possess one or more chemicals or supplies or equipment with intent to manufacture a controlled substance.

The offense provision, entitled "Unlawful distribution, manufacturing, dispensing, sale or possession," creates one offense, within which are three separate categories of proscribed actions, offset by the word "or" and semicolons. An individual can violate the statute, and commit the offense, in several ways specified in the three categories: 1) actual manufacture, dispensing, selling, distributing, possession, or possession with intent to manufacture, dispense, sell or distribute a controlled substance; 2) inducement, attempted inducement, and conspiracy to manufacture, dispense, sell, distribute, possess, or possess with intent to manufacture, dispense, sell, or distribute a controlled substance; and 3) possession of one or more chemicals or supplies with the intent to manufacture a controlled substance.

Within each of the three categories defined by the offense provision are separate ways in which an individual can violate that category, and therefore commit the offense. For example, an individual can violate the statute as specified in the first category through, among other things, simple possession of a controlled substance or possession of a controlled substance with the intent to distribute it. Similarly, the statute can be violated as specified in the second category by, among other things, conspiracy to possess a controlled substance or attempt to induce another to possess a controlled substance. Accordingly, each category included in the offense provision contains multiple proscribed actions and provides for a variety of ways in which an individual can commit the offense.

A criminal sentence may be enhanced if the crime falls within the category of extraordinary risk crimes defined in section 18–1.3–401. Subsection (10)(b), the extraordinary risk provision, provides:

Crimes that present an extraordinary risk of harm to society shall include the following: ... (XI) Unlawful distribution, manufacturing, dispensing, sale, or possession of a controlled substance with the intent to sell, distribute, manufacture, or dispense, as defined in section 18–18–405.

Section 18–1.3–401(10)(b)(XI) contains much of the same language as section 18–18–405(1)(a); however, the actions enumerated in the extraordinary risk provision are not identical to the ways the offense provision can be violated. The actions listed in the extraordinary risk provision mirror only the ways the offense can be committed which are contained in the first category of the offense provision, with the exception of simple possession which the extraordinary risk provision does not mention, and does not address any of the ways the statute can be violated contained in the second and third categories.

The extraordinary risk provision states "unlawful distribution, manufacturing, dispensing, sale, or possession of a controlled substance with the intent to sell, distribute, manufacture, or dispense" a controlled substance constitutes an extraordinary risk crime. The first category of the offense provision proscribes actual manufacturing, dispensing, selling, distributing, possession, or possession with intent to manufacture, dispense, sell or distribute a controlled substance. Therefore, while the list of specifically enumerated actions in the extraordinary risk provision contains *most* of the ways the offense can be committed that are contained in the first category of the offense provision, the extraordinary risk provision does not list *all* of the ways the offense provision can be violated. Specifically, the extraordinary risk provision fails to include simple possession, which is enumerated in the first category of the offense provision, and any of the ways to violate the offense provision contained in the second or third categories, such as possession of one or more chemicals or supplies with the intent to manufacture a controlled substance (contained within the third category) and attempt to manufacture, dispense, sell, or distribute a controlled substance (contained within the second category). Of particular importance to the present case, the extraordinary risk provision does not list conspiracy to distribute, manufacture, dispense,

or sell a controlled substance—the proscribed action to which Valenzuela pled guilty.

The court of appeals reasoned that, because conspiracy to distribute a controlled substance is not enumerated in the extraordinary risk provision, it does not constitute an extraordinary risk crime and Valenzuela's sentence could not be aggravated on that basis.

The People dispute this and argue that inclusion of the phrase "as defined in section 18–18–405" in the extraordinary risk provision refers to the entirety of section 18–18–405(1)(a), with the exception of simple possession, and thus any of the actions listed in the offense provision, excepting simple possession, constitutes an extraordinary risk crime under the extraordinary risk provision.[3] The People further argue that the offense provision does not create three distinct categories or alternate ways of violating the statute, but rather that the structure of the offense provision is dictated merely by grammatical concerns, and the offense provision simply contains a list of proscribed actions relating to controlled substances.

■ As discussed above, the structure of the offense provision makes clear that three distinct categories of actions are criminalized. The three categories are separated by a semicolon and the disjunctive word "or." Use of the word "or" is ordinarily "assumed to demarcate different categories." *Garcia v. United States,* 469 U.S. 70, 73, 105 S.Ct.

479, 83 L.Ed.2d 472 (1985)(use of the term "or" indicates an intent to identify separate categories using the word's normal meaning); *Bloomer v. Bd. of County Comm'rs,* 799 P.2d 942, 944 (Colo.1990).

In *People v. Abiodun,* 111 P.3d 462, 471 (Colo.2005), this court held that section 18–18–405(1)(a) creates a single offense for double jeopardy purposes, and an individual could not be convicted for possessing a "discrete quantum of drugs" and also convicted for distributing that same quantum of drugs. In *Abiodun* this court stated the offense provision defines a single offense

> structured as a series of acts, with reference to the same controlled substance and governed by a common mens rea. The acts chosen for specific inclusion are not themselves mutually exclusive but overlap in various ways and cover a continuum of conduct from the production of a controlled substance to its delivery to another person, under any of a number of circumstances.

*Id.* at 466.

Therefore, section 18–18–405(1)(a) creates one single offense under the title "Unlawful distribution, manufacturing, dispensing, sale or possession," which can be violated through commission of one of the "series of acts" organized into three distinct categories.

While section 18–18–405(1)(a) creates a single offense for double jeopardy purposes, nothing in *Abiodun* suggests the General Assembly may not choose to punish different ways of committing the offense differently.[4]

---

**3.** The People do not specifically address whether they believe the way of violating the offense provision contained in the third category—possession of one or more chemicals or supplies or equipment with the intent to manufacture a controlled substance—is within the purview of the extraordinary risk provision.

**4.** In *Abiodun,* we stated that the ways of committing the offense enumerated in section 18–18–405(1)(a) constitute the entirety of the offense provision, and the remainder of the statute is devoted entirely to the appropriate sentence for violation of the proscription contained in subsection (1)(a). In characterizing the remainder of section 18–18–405, we stated "the defendant's sentence required by the statute is in no way dependent upon the particular enumerated act or acts he is found to have committed." 111 P.3d 462, 466 (Colo.2005). While this language ap-

pears to suggest that for sentencing purposes it is immaterial which proscribed act a defendant commits, this statement was merely dicta, made without explanation and not in the context of a discussion of sentencing. Rather, the statement was simply made to distinguish the single offense created by subsection (1)(a) from the remainder of the statute dealing with sentencing considerations. The language quoted above notwithstanding, in *Abiodun* this court recognized that it is "the legislature's choice to treat a course of conduct, or various acts it considers to be related in time, nature or purpose ... as one or as more than one offense," and that "for a host of reasons, including not only its assessment of the appropriateness of multiple punishments" the legislature may choose to define certain proscribed actions as a single crime. 111 P.3d at 467. Therefore, we acknowledged that for purposes of punishment, courts must look to the

In fact, elsewhere the legislature has defined possession as a class four felony and exempted simple possession from the definition of extraordinary risk crimes. Accordingly, to determine the proper sentence, a sentencing judge must look to the language selected by the legislature.

The fact that the offense provision creates a single offense containing three distinct categories, each providing different ways the offense can be committed, is not particularly significant with regard to the offense provision itself because, regardless of which proscribed act a defendant commits, he will have violated the statute and may be charged under section 18–18–405. However, the creation of three distinct categories *is* significant when the offense provision is read in conjunction with the extraordinary risk provision.

The actions listed in the extraordinary risk provision refer only to the actions listed in the first category of the offense provision, with the exception of simple possession, and do not encompass the inchoate offenses enumerated within the second category or possession of chemicals or supplies with the intent to manufacture a controlled substance as prohibited by the third category. Specifically, the extraordinary risk provision states "unlawful distribution, manufacturing, dispensing, sale, or possession of a controlled substance with the intent to sell, distribute, manufacture, or dispense, as defined in section 18–18–405" constitute extraordinary risk crimes. The first category of the offense provision provides that it is unlawful for any person knowingly to "manufacture, dispense, sell, distribute, possess, or possess with intent to manufacture, dispense, sell, or distribute a controlled substance." While the offense provision lists a total of ten ways in which an individual can violate the statute, the extraordinary risk provision only references five of the ways to violate the statute.

The five ways to violate the offense provision enumerated in the extraordinary risk provision—distribution, manufacturing, dispensing, sale or possession of a controlled substance with the intent to sell, distribute,

manufacture or dispense—mirror five of the six ways of violating the statute listed in the first category of the offense provision. Therefore, based on the plain language of the statute, it appears the General Assembly intended only manufacturing, dispensing, selling, or distribution of a controlled substance and possession of a controlled substance with intent to manufacture, dispense, sell or distribute to constitute extraordinary risk crimes subject to aggravated sentencing.

The People argue that inclusion of the phrase "as defined in section 18–18–405" makes clear that the extraordinary risk provision refers to all of the ways the offense provision can be violated, with the exception of simple possession. However, we disagree.

The language "as defined in section 18–18–405" could be read as referring to two different things. First, as urged by the People, it could be read as referring to the entirety of the offense provision, including all of the different ways of violating the statute. Second, it could be read as a simple cross reference to "unlawful distribution, manufacturing, dispensing, sale, or possession of a controlled substance with the intent to sell, distribute, manufacture, or dispense," as those specific offenses are defined in section 18–18–405.

The People support their argument that "as defined in section 18–18–405" refers to all of the different ways of violating the offense provision, with the exception of simple possession, by arguing the specifically listed actions of "unlawful distribution, manufacturing, dispensing, sale, or possession of a controlled substance with the intent to sell, distribute, manufacture, or dispense" contained in the extraordinary risk provision are merely a reference to the title of section 18–18–405—"Unlawful distribution, manufacturing, dispensing, sale or possession."

If the extraordinary risk provision applied to all the ways the offense provision can be violated, and the actions listed in the extraordinary risk provision were merely a reference to the title, seemingly the enumerated actions would mirror the title of the offense

distinctions the legislature drew between certain types of conduct and to the language selected by

the legislature when mandating particular sentences.

provision. However, the extraordinary risk provision states "unlawful distribution, manufacturing, dispensing, sale, or possession of a controlled substance with the intent to sell, distribute, manufacture, or dispense, as defined in section 18–18–405" are classified as extraordinary risk crimes. The title of the statute lists only distribution, manufacturing, dispensing, sale, and possession. The actions listed in the title are similar to those listed in the extraordinary risk provision; however, the extraordinary risk provision actions are more specific than those in the title. While the extraordinary risk provision specifically includes possession of a controlled substance with the intent to sell, distribute, manufacture, or dispense, the title does not reference this action. Therefore, based on the plain language of the extraordinary risk provision and the title of the offense provision, the actions enumerated in the extraordinary risk provision do not appear to reference the title of section 18–18–405.

Further, the People's argument is undermined by the fact that, as they concede, the extraordinary risk provision does not apply to simple possession of a controlled substance. Seemingly, if the extraordinary risk provision does not apply to simple possession, and simple possession is not included within the actions enumerated in the extraordinary risk provision, the argument that the extraordinary risk provision applies to all of the ways of violating the statute is flawed. The language of the extraordinary risk provision does not contain any language suggesting an intent to exclude simple possession yet include the inchoate offenses of attempt and conspiracy. Rather, the extraordinary risk provision treats simple possession and conspiracy and attempt in the same manner; that is, it does not mention them. If the General Assembly intended to exclude simple possession from the extraordinary risk provision by not mentioning it, the same argument can be made for attempt and conspiracy.

Therefore, the People's argument that the extraordinary risk provision's language "as defined in section 18–18–405" references all of the ways of violating the offense provision is unpersuasive. A better understanding of the "as defined in" language is that it is included in the extraordinary risk provision as a means to cross reference "unlawful distribution, manufacturing, dispensing, sale, or possession of a controlled substance with the intent to sell, distribute, manufacture, or dispense," as those specific actions are defined in section 18–18–405. This reading of the language is consistent with the plain meaning of the statute.

Here, the ways of violating the offense provision not listed in the extraordinary risk provision are what could be classified as the less severe or less harmful ways of violating the statute. The extraordinary risk provision, by its terms, applies to unlawful distribution, manufacturing, dispensing, sale, or possession of a controlled substance with the intent to sell, distribute, manufacture, or dispense. It however does not include simple possession, the inchoate offenses of attempt and conspiracy, and possession of chemicals or supplies with the intent to manufacture a controlled substance. The actions enumerated in the extraordinary risk provision are the ways of violating the statute that relate to the actual supply of controlled substances to third parties or the actual possession of controlled substances with the intent to supply those substances to third parties. The actions enumerated in the extraordinary risk provision do not include the ways of violating the statute that simply relate to possession of a controlled substance for personal use, conspiracy or attempt to manufacture, dispense, sell, or distribute a controlled substance, or possession of a chemical or supply necessary for manufacture. Here, by specifically including the actions related to supply of controlled substances to third parties in the extraordinary risk provision, the General Assembly chose to draw a distinction between, and punish more harshly, actions related to sale, manufacture and distribution of controlled substances than inchoate actions, possession of controlled substances for personal use, and possession of supplies necessary for production of controlled substances. Therefore, by specifically listing unlawful distribution, manufacturing, dispensing, sale, or possession of a controlled substance with the intent to sell, distribute, manufacture, or dispense, but not listing any of the other actions proscribed by the offense provision,

the General Assembly drew a logical distinction between conduct involving the actual dissemination of controlled substances to third parties, and conduct not involving actual dissemination to third parties.

A finding that the extraordinary risk provision refers just to unlawful distribution, manufacturing, dispensing, sale, or possession of a controlled substance with the intent to sell, distribute, manufacture, or dispense—the ways of violating the offense provision specifically enumerated in the extraordinary risk provision—is also compelled by the statutory scheme of section 18–18–405.

Among the different ways the offense provision can be violated are the inchoate offenses of conspiracy and attempt. Generally, under the Colorado statutory sentencing provisions, attempt and conspiracy are punished to a lesser degree than the completed offense. By including attempt and conspiracy within the offense provision, but for the extraordinary risk provision, attempt and conspiracy would be punished to the same degree as the completed actions enumerated in the offense provision. However, through the extraordinary risk provision and its exclusion of conspiracy and attempt, the completed offenses of unlawful distribution, manufacturing, dispensing, sale, or possession of a controlled substance with the intent to sell, distribute, manufacture, or dispense are punished more harshly than the inchoate offenses of attempt and conspiracy to commit one of the specifically enumerated acts. Accordingly, the sentence ultimately imposed on a defendant is dictated by the manner in which he violated the offense provision, and the inchoate offenses of attempt and conspiracy are punished less harshly than the completed offense.

This reading of the statute is bolstered by the language of section 18–18–405(3.5) which states "the felony offense of unlawfully manufacturing, dispensing, selling, distributing, or possessing with intent to unlawfully manufacture, dispense, sell, or distribute a controlled substance is an extraordinary risk crime that is subject to the modified presumptive sentencing range specified in section 18–1.3–401(10)." The extraordinary risk provision states "unlawful distribution, manufacturing, dispensing, sale, or possession of a controlled substance with the intent to sell, distribute, manufacture, or dispense, as defined in section 18–18–405" constitute extraordinary risk crimes. Both section 18–18–405(3.5) and the extraordinary risk provision state the acts of manufacturing, dispensing, selling, distributing, and possessing a controlled substance with the intent to sell, distribute, manufacture, or dispense constitute extraordinary risk crimes. Therefore, the language of section 18–18–405(3.5) covers precisely the same conduct enumerated in the extraordinary risk provision, and explicitly excludes the inchoate offenses of attempt and conspiracy and the offense of simple possession. The fact that section 18–18–405(3.5) and the extraordinary risk provision each state the same ways of violating the offense provision constitute extraordinary risk crimes shows that the General Assembly intended only unlawful distribution, manufacturing, dispensing, sale, or possession of a controlled substance with the intent to sell, distribute, manufacture, or dispense to constitute extraordinary risk crimes subject to aggravated sentencing.

Therefore, because the language of the extraordinary risk provision is clear, we need look no further than the plain language of the statute to determine its meaning. The extraordinary risk provision states "unlawful distribution, manufacturing, dispensing, sale, or possession of a controlled substance with the intent to sell, distribute, manufacture, or dispense" are classified as extraordinary risk crimes. Valenzuela was convicted of conspiracy to distribute a schedule II controlled substance, a crime not within the definition of extraordinary risk crimes under section 18–1.3–401(10)(b)(XI). Villanueva's sentence should therefore not have been aggravated on that basis.

## V. Conclusion

Accordingly, because we hold that Valenzuela's sentence for conspiracy to distribute a schedule II controlled substance, in violation of section 18–18–405(1)(a) was improperly aggravated under section 18–1.3–401(10)(b)(XI), we affirm the judgment of the court of appeals.

Justice COATS dissents, and Justice EID joins in the dissent.

Justice COATS, dissenting.

Although the majority holding today will have no effect on the length of the defendant's sentence to incarceration, and it in no way prohibits the legislature from categorizing the inchoate acts included in this drug offense as extraordinary risk crimes by adding a few (in my opinion, extraneous) words, I feel compelled to take issue with the majority opinion, primarily for two distinct, but related, reasons. I object to the majority's reliance on the concept of "plain meaning" with reference to its construction of this statute, and I also object to any construction of a statute ascribing to it different and irreconcilable meanings depending upon its effect in a given context. I therefore respectfully dissent.

While I count myself among the first to limit the meaning of a statute according to the language actually chosen by the legislature to express its intent, I nevertheless recognize that particular statutory language can sometimes be reasonably understood in more than one way. I consider it misleading to suggest, as I believe the majority does, that the language chosen by the legislature to proscribe and punish the range of conduct included in section 18–18–405(1)(a), is susceptible of but one reasonable interpretation and therefore has a "plain meaning." Where a court must resort to the array of interpretative aids and justifications found in the majority's explanation, to conclude that the meaning of a statute is "plain," at least in my view, at best minimizes the responsibility of the court in assigning a meaning to that statute and at worst, obscures policy choices actually made and imposed by the court.

Even where statutory language is susceptible of more than one reasonable understanding, however, I do not believe its meaning can vary in different classes of cases. Not five years ago, in part because of its more lenient effect on criminal defendants, this court construed this very proscriptive statute as creating a single, undifferentiated offense rather than "three separate categories of proscribed actions." Maj. op. at 591; *see People v. Abiodun*, 111 P.3d 462 (Colo.2005). We there held that with the exception of

possession for personal use, which is expressly distinguished from the continuum of all the other proscribed conduct by its classification as a less serious felony, "the defendant's sentence required by the statute is in no way dependent upon the particular act or acts he is found to have committed." *Id.* at 466. I do not believe the same language can be construed as "the creation of single crime" when that works to the advantage of the defendant but as the creation of "three separate categories" of offenses when that produces the more advantageous result for him.

Subsection (3.5) of the statute, which is designated "Unlawful distribution, manufacturing, dispensing, sale, or possession," classifies as an extraordinary risk crime *"[t]he felony offense of* unlawfully manufacturing, dispensing, selling, distributing, or possessing with intent to unlawfully manufacture, dispense, sell, or distribute a controlled substance." (emphasis added). This subsection specifies, as we recognized in *Abiodun*, that the litany of proscribed conduct, including the preparatory acts statutorily left undifferentiated from completed ones, creates a single offense, punishable by the penalty ranges prescribed for extraordinary risk crimes. It in no way purports to classify this offense as an extraordinary risk crime only when committed in specifically designated ways, but differs in its description from the title of the offense only by expressly excluding from "possession" the conduct already distinguished as a different and lesser offense in the body of the proscription.

Because we have construed the continuum of conduct, "the gravamen of which is preventing the unauthorized delivery of" illegal drugs to someone else, as a single, undifferentiated offense and the statute itself punishes that "felony offense" as an extraordinary risk crime, I believe our prior holdings are irreconcilable with the majority's current construction.

I therefore respectfully dissent.

I am authorized to state that Justice EID joins in this dissent.