# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-41152

United States Court of Appeals
Fifth Circuit

**FILED**
September 5, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

LUIS DANERY GOMEZ,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 7:16-CR-231-1

Before DAVIS, GRAVES, and COSTA, Circuit Judges.

PER CURIAM:*

Defendant Luis Danery Gomez appeals the district court's application of a 16-level enhancement under U.S.S.G. § 2L1.2(b)(1)(A)(i) (2015) to his sentence after finding that his two prior convictions under COLO. REV. STAT. § 18-18-405(1)(a) (2012) were "drug trafficking offense[s]" under the Sentencing Guidelines. Gomez failed to preserve his objection below, so we review for plain

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## No. 16-41152

error.  Because we find that any error by the district court was not plain, we AFFIRM.

## I.

Gomez, a native and citizen of Honduras, pleaded guilty without a plea agreement to illegal reentry in violation of 8 U.S.C. § 1326(a) and (b).

The Presentence Investigation Report ("PSR") set Gomez's base offense level at 8 for violation of 8 U.S.C. § 1326(a) and (b) under U.S.S.G. § 2L1.2(a). The PSR determined that his two prior convictions under COLO. REV. STAT. § 18-18-405(1)(a) (2012) qualified as "drug trafficking offense[s]" under U.S.S.G. § 2L1.2(b)(1)(A)(i) (2015), warranting a 16-level enhancement.

The district court adopted the factual findings in the PSR and determined that after a three-level reduction for acceptance of responsibility, Gomez's total offense level was 21 with a criminal history category of IV, warranting a punishment range of 57 to 71 months of imprisonment.  Gomez did not challenge the 16-level enhancement under § 2L1.2(b)(1)(A)(i), but did argue that a lesser sentence was appropriate because the enhancement and criminal history category exaggerated the severity of his prior convictions.  The district court agreed and sentenced Gomez to 42 months of imprisonment, below the 57 to 71 month Guideline range.

Gomez appeals, arguing that the district court plainly erred by treating his prior conviction under COLO. REV. STAT. § 18-18-405(1)(a) as a "drug trafficking offense" and applying a 16-level enhancement to his offense level under U.S.S.G. § 2L1.2(b)(1)(A)(i).

## II.

Because Gomez did not raise this argument before the district court, our review is for plain error.[1]  Plain error review has four prongs: (1) "there must

---

[1] *See United States v. Torres*, 856 F.3d 1095, 1098 (5th Cir. 2017).

No. 16-41152

be an error or defect—some sort of deviation from a legal rule—that has not been intentionally relinquished or abandoned"; (2) "the legal error must be clear or obvious"; (3) "the error must have affected the appellant's substantial rights"; and if those three elements are met, (4) the Court has the discretion to correct the error "only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings."[2]

## III.

Under the Sentencing Guidelines, § 2L1.2(b)(1)(A)(i) allows for a 16-level enhancement if the defendant was previously deported following a conviction "for a felony that is (i) a drug trafficking offense for which the sentence imposed exceeded 13 months."[3] The Commentary following the Guideline defines "drug trafficking offense" as an offense that "prohibits the manufacture, import, export, distribution, or dispensing of, or offer to sell a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense."[4]

Gomez argues that the district court erred in applying the 16-level enhancement based on his prior Colorado conviction under § 18-18-405(1)(a) because the statute is indivisible and categorically broader than the generic definition in the Guidelines.

To determine whether a prior state conviction is a drug trafficking offense under the Guidelines, we generally use the categorical approach.[5]

---

[2] *Puckett v. United States*, 556 U.S. 129, 135 (2009) (quoting and citing *United States v. Olano*, 507 U.S. 725, 732-36 (1993)) (internal quotation marks, brackets, and citations omitted).

[3] U.S.S.G. § 2L1.2(b)(1)(A)(i) (2015).

[4] U.S.S.G. § 2L1.2 cmt. n.1(B)(iv).

[5] *See United States v. Wikkerink*, 841 F.3d 327, 331 (5th Cir. 2016) (citing *Taylor v. United States*, 495 U.S. 575, 602 (1990)).

No. 16-41152

"Under the categorical approach, the analysis is grounded in the elements of the statute of conviction rather than a defendant's specific conduct."[6]  To determine if a prior conviction is an offense defined by the Guidelines, we "look to the elements of the offense enumerated or defined by the Guideline section and compare those elements to the elements of the prior offense for which the defendant was convicted."[7]  Under *Mathis v. United States*, if the statute defines "multiple crimes" such that it contains alternative elements it is divisible, and we use the modified categorical approach.[8]  In that case, we look to "a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements a defendant was convicted of."[9]  After identifying the precise crime, we "then apply the categorical approach, asking whether that precise crime matches the Guidelines offense at issue."[10]

Gomez's crime of conviction is defined by COLO. REV. STAT. § 18-18-405(1)(a) in relevant part as follows:

> [I]t is unlawful for any person knowingly to manufacture, dispense, sell, or distribute, or to possess with intent to manufacture, dispense, sell or distribute, a controlled substance; or induce, attempt to induce, or conspire with one or more other persons, to manufacture, dispense, sell, distribute, or possess with intent to manufacture, dispense, sell, or distribute, a controlled substance; or possess one or more chemicals or supplies or equipment with intent to manufacture a controlled substance.[11]

---

[6] *United States v. Rodriguez*, 711 F.3d 541, 549 (5th Cir. 2013) (en banc).

[7] *United States v. Tanksley*, 848 F.3d 347, 350 (5th Cir.), *supplemented*, 854 F.3d 284 (5th Cir. 2017) (quoting *United States v. Howell*, 838 F.3d 489, 494 (5th Cir. 2016)) (internal quotation marks omitted).

[8] *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016).

[9] *Id.* (citing *Shepard v. United States*, 544 U.S. 13, 26 (2005); *Taylor*, 495 U.S. at 602).

[10] *Tanksley*, 848 F.3d at 350.

[11] COLO. REV. STAT. § 18-18-405(1)(a) (2012).

No. 16-41152

Gomez contends that this statute is indivisible, containing alternative means to commit the offense, and therefore, the categorical approach applies.[12] Because the Colorado offense is broader than the definition of "drug trafficking offense" contained in the Guidelines, Gomez argues, the 16-level enhancement should not have been applied.

The government concedes that § 18-18-405(1)(a) categorically reaches broader conduct than the definition of a drug trafficking offense. In *United States v. Arizaga-Acosta*, we held that the defendant's prior conviction under 21 U.S.C. § 841(d)(1) for possession of a precursor chemical with intent to manufacture a controlled substance was broader than the definition of "drug trafficking offense" contained in the Guideline Commentary under § 2L1.2 cmt. n.1(B)(iv).[13] The Colorado statute criminalizes the same conduct—possession of a precursor chemical—and would equally be categorically broader than the Guideline definition.[14]

Therefore, the government argues that § 18-18-405(1)(a) contains multiple crimes that are alternative elements, rendering the statute divisible. If so, the Court should apply the modified categorical approach to determine which portion of subsection (1)(a) Gomez was convicted under. If Gomez was convicted of either knowingly to (a) "manufacture, dispense, sell, or distribute, or to possess with intent to manufacture, dispense, sell, or distribute, a controlled substance"; or (b) "induce, attempt to induce, or conspire with one or

---

[12] *See Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016).

[13] *United States v. Arizaga-Acosta*, 436 F.3d 506, 508 (5th Cir. 2006); *see also United States v. Reyes-Mendoza*, 665 F.3d 165, 168 (5th Cir. 2011) (holding that a statute that criminalizes "production of a precursor with knowledge that it will be used to produce a controlled substance" was broader than the "manufacture" of a controlled substance within the definition of "drug trafficking offense").

[14] *See* COLO. REV. STAT. § 18-18-405(1)(a) (making it unlawful for a person to knowingly "possess one or more chemicals or supplies or equipment with intent to manufacture a controlled substance").

5

more other persons to manufacture, dispense, sell, distribute, or possess with intent to manufacture, dispense, sell, or distribute, a controlled substance," then either alternative element categorically falls within the definition of a "drug trafficking offense" in the Guidelines. The government argues that the three criminal acts contained in subsection (1)(a) of the Colorado statute are offset by semicolons and phrased in the disjunctive, demonstrating that they are alternative elements.

"A federal court should defer to state law" in determining "whether the state statute contains alternative means or elements."[15]   The Colorado Supreme Court has spoken twice on the structure of § 18-18-405(1)(a). First, in *People v. Abiodun*, the court described subsection(1)(a) for double jeopardy purposes as "a series of acts, with reference to the same controlled substance and governed by a common mens rea," where the acts are "not themselves mutually exclusive but overlap in various ways and cover a continuum of conduct."[16]   Further, the court said, "Nothing in the specific language of the statute or the history of its enactment suggests an intent to create a separate offense for each proscribed act."[17]   The conduct criminalized in § 18-18-405(1)(a) represents a "single crime" that "strongly suggests an intent to 'criminalize successive stages of a single undertaking,' 'encompass[ing] every act and activity which could lead to the proliferation of drug traffic,'" not "separate offenses."[18]

A few years later, the Colorado Supreme Court again confronted the structure of § 18-18-405(1)(a) in *People v. Valenzuela* and determined that the

---

[15] *United States v. Uribe*, 838 F.3d 667, 670 (5th Cir. 2016), *cert. denied*, 137 S. Ct. 1359 (2017).

[16] *People v. Abiodun*, 111 F.3d 462, 466 (Colo. 2005).

[17] *Id.* at 466-67.

[18] *Id.* at 467 (citing and quoting *United States v. Mendoza*, 902 F.2d 693, 697 (8th Cir. 1990); *United States v. Gomez*, 593 F.2d 210, 213 (3d Cir. 1979)).

offense criminalized "three distinct *categories* of actions."[19]  There, the court held that a Colorado extraordinary risk of harm sentencing enhancement applied to only the "manufacturing, dispensing, selling, or distribution of a controlled substance and possession of a controlled substance with intent to manufacture, dispense, sell or distribute" portion of the crime.  The court rejected the application of the enhancement to the simple possession, conspiracy, or possession of the chemicals or supplies with intent to manufacture portions of subsection (1)(a).[20]  The *Valenzuela* majority insisted that the conduct described in the statue remained "one single offense," and the crime could be "violated through commission of one of the 'series of acts' organized into three distinct categories."[21]  The dissent contended the majority had assigned "different and irreconcilable meanings" to the different conduct in the statute and had undermined the holding of *Abiodun*.[22]

Under *Abiodun*, Gomez is correct; § 18-18-405(1)(a) describes a single offense with different means of committing the drug trafficking crime so that the statute is indivisible.  However, the government argues that *Valenzuela* casts doubt on that interpretation and the three categories of conduct criminalized under subsection (1)(a) are alternative elements.  If the "categories of actions" set forth in *Valenzuela* establishes alternative elements in subsection (1)(a) as supported by the dissent, the statute is divisible and the modified categorical approach applies.  The government argues that because the overbroad subdivision of (1)(a), dealing with possession of chemicals, supplies, or equipment with intent to manufacture a controlled substance, falls outside of the Guidelines definition of a "drug trafficking offense," we must look

---

[19] *People v. Valenzuela*, 216 P.3d 588, 592 (Colo. 2009) (emphasis added).
[20] *Id.* at 593.
[21] *Id.* at 592.
[22] *Id.* at 596 (Coats, J., dissenting).

to Gomez's charging documents to see whether he was charged and convicted under one of the subsections that do fall within the definition. If we can consult the charging documents, both of Gomez's convictions would be considered "drug trafficking offense[s]" because they charge possession with intent to distribute and distribution of controlled substances.

Also, the Colorado Supreme Court has not addressed this statute since the Supreme Court's decision in *Mathis*, so we do not have guidance on whether the categories of conduct proscribed in subsection (1)(a) constitutes alternative means or elements as provided in *Mathis*. It is clear that *Valenzuela* did not expressly overrule *Abiodun*, but it arguably undermined its holding that subsection (1)(a) constitutes a single, indivisible crime.

Assuming the district court erred by not finding § 18-18-405(1)(a) was indivisible under *Abiodun*, we find that any error was not so clear or obvious to make it plain. "An error cannot be plain where there is no controlling authority on point and where the most closely analogous precedent leads to conflicting results."[23] Under *Abiodun* and *Valenzuela*, it was unclear whether the subsections of section (1)(a) of the Colorado statute were elements or means. The district court did not plainly err in its application of the enhancement in light of the confusing precedent in Colorado law. Because we find the district court's error was not plain, we need not reach the third and fourth prong of the plain error analysis.

IV.

Colorado jurisprudence allows for conflicting interpretations of Gomez's prior crime of conviction, COLO. REV. STAT. § 18-18-405(1)(a). We therefore hold that the district court did not plainly err in its application of a 16-level

---

[23] *United States v. De La Fuente*, 353 F.3d 766, 769 (9th Cir. 2003).

No. 16-41152

enhancement under U.S.S.G. § 2L1.2(b)(1)(A)(i) for a drug trafficking offense.

AFFIRMED.

No. 16-41152

JAMES E. GRAVES, JR., Circuit Judge, dissenting:

Because I would conclude that the district court plainly erred in its application of a 16-level enhancement under U.S.S.G. § 2L1.2(b)(1)(A)(i), I respectfully dissent.

Gomez was convicted under Colorado statute section 18-18-405(1)(a). The Colorado Supreme Court concluded in *People v. Abiodun*, 111 P.3d 462, 466 (Colo. 2005), that the conduct criminalized in section 18-18-405(1)(a) represents a single crime and not separate offenses. In the subsequent case of *People v. Valenzuela*, 216 P.3d 588, 592 (Colo. 2009), the Colorado Supreme Court repeatedly reiterated the holding of *Abiodun* and likewise found that "section 18–18–405(1)(a) creates one single offense." *Valenzuela*, 216 P.3d at 592-93.

Thus, I agree with the majority's acknowledgment that *Valenzuela* did not overrule *Abiodun*. However, then the majority concludes that *Valenzuela* "arguably undermined [*Abiodun's*] holding that subsection (1)(a) constitutes a single, indivisible crime." It did not. Consequently, I disagree with the majority's conclusions that there is no clear controlling authority and that Colorado jurisprudence provides conflicting interpretations of Gomez's prior crime of conviction.

Under the categorical approach, the statute is indivisible and categorically broader than the generic definition of a drug trafficking offense under the Guidelines. As Colorado's jurisprudence is not conflicting, the error was clear and obvious. While the majority does not reach prongs three and four of the plain error analysis, I conclude that the error clearly affected Gomez's substantial rights and "seriously affects the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Mares*, 402 F.3d 511, 520 (5th Cir. 2005). Further, we have granted relief in similar

No. 16-41152

circumstances.  *See United States v. Martinez-Rodriguez*, 821 F.3d 659, 667 (5th Cir. 2016).

For these reasons, I conclude that the district court did plainly err in its application of the enhancement.  Because I would vacate and remand, I respectfully dissent.